**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JACKED UP, LLC** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action Nos. **3:11-CV-3296-L** and |
| | § | **3:13-CV-3752-L** |
| | § | |
| **SARA LEE CORPORATION and** | § | |
| **THE J.M. SMUCKER COMPANY**, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff Jacked Up, LLC's Motion for Partial Summary Judgment (Doc.

72), filed August 22, 2014; Defendants' Motion to Strike Summary Judgment Evidence (Doc. 87),

filed October 10, 2014; Defendant Sara Lee Corporation's Motion for Summary Judgment (Doc.

110), filed November 17, 2014; Plaintiff's Motion to Strike Summary Judgment Evidence (Doc.

129), filed December 8, 2014. For the reasons herein stated, the court **denies** Plaintiff Jacked Up,

LLC's Motion for Partial Summary Judgment and **grants** Defendant Sara Lee Corporation's Motion

for Summary Judgment.

**I.      Factual Background**

The case was originally brought by Plaintiff Jacked Up, LLC ("Plaintiff" or "Jacked Up")

in the 134th Judicial District Court of  Dallas County, Texas, on November 7, 2011, against

Defendant Sara Lee Corporation ("Sara Lee").  On November 29, 2011, the action was removed to

federal court because complete diversity of citizenship exists between the parties and the amount in

**Memorandum Opinion and Order - Page 1**

controversy exceeds $75,000.  On September 25, 2013, the  court consolidated Jacked Up's action against Defendant  the J.M. Smucker Company ("Smucker" or "Defendant") with its action against Sara Lee.  Plaintiff brought claims for breach of contract, breach of fiduciary duty, fraud, and fraudulent inducement against Sara Lee.

Jacked Up sells and develops energy drinks and energy shots.  Pl.'s App. 1.  Joe Schmitz ("Mr. Schmitz"), a principal of Jacked Up, attended the McLane National Tradeshow and met representatives from Defendant Sara Lee Corporation ("Sara Lee" or "Defendant").  *Id.*  Starting in May 2011, Jacked Up and Sara Lee began negotiating a multi-year licensing deal for Jacked Up to develop energy teas and flavored coffee.  *Id.* at 2; Defs.' App. 4, 12-13, Immell Aff.  ¶¶ 11, 31.  Plaintiff contends that Sara Lee would only execute the License Agreement if the products were ready to launch at the National Association of Convenience Stores ("NACS") show in October 2011 and that Jacked Up expended resources and efforts to prepare for this show.

On October 1, 2011, Jacked Up and Sara Lee entered a license agreement (the "License Agreement").  Pl.'s App. 5; Defs.' App. 59-70.   At issue in this action is the termination provision found in Section 14(b) of the contract.   According to Plaintiff, Sara Lee represented that the termination clause was necessary "in the event North American Beverage is purchased by a third party company, that [acquiring] company would have the right to terminate the agreement with proper notification."  Pl.'s App. 4 (internal quotation marks omitted).  Plaintiff argues that Sara Lee included this clause because it agreed to sell its assets to Smucker and withheld this information from Jacked Up.

On October 24, 2011, Sara Lee announced the sale of its North American coffee and tea operations to Smucker. Pl.'s Mot. Summ. J. App. 10, Schmitz Decl. 10.  Smucker declined to

assume Sara Lee's License Agreement with Jacked Up.   *See* Def.'s App. 321-22, Allen Dep. (explaining why Smucker declined to adopt Sara Lee's contract with Jacked Up).   Plaintiff alleges that it received a phone call from Sara Lee's representatives and that "21 days into an 8-year contract, [Sara Lee], without cause or justification, wholly repudiated the agreement and broke each and every promise and representation it had made to [Jacked Up]."  Pl.'s Mot. Summ. J. 19 (citing Pl.'s App. 9-10).

Plaintiff moves for summary judgment on its claims for breach of contract, fraud, and fraudulent inducement against Sara Lee. Sara Lee moves for summary judgment on Plaintiff's claims for breach of contract, breach of fiduciary duty, fraud, and fraudulent inducement.  After reviewing both motions, the court determines that Sara Lee's motion for summary judgment is meritorious as to all of Plaintiff's claims.  Based on this conclusion, the court addresses Sara Lee's motion first.

## II.   Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility

determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the

entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

**III.     Sara Lee's Motion for Summary Judgment**

**A.     Plaintiff's Breach of Contract Claim**

As a preliminary matter, pursuant to a choice of law provision in the License Agreement, Illinois law governs Plaintiff's claim for breach of the contract.  *See* Defs.' App. 68, License Agreement § 20(g) ("This Agreement shall be construed in accordance with and governed by the laws of the State of Illinois, without regard to its conflicts of law rules.").  Moreover, the parties agree that this provision is binding.  *See* Pl.'s Mot. Summ. J. 21 (applying Illinois law to Plaintiff's claim for breach of contract); Def.'s Mot. Summ. J. 10 (applying Illinois law to Plaintiff's claim for breach of contract).

Sara Lee argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because the License Agreement unambiguously permits either party to terminate the agreement. Plaintiff contends that the contract is ambiguous and that Sara Lee is not entitled to summary judgment.

The termination clause at issue provides as follows: "Either party shall have the right to terminate this Agreement if it provides written notice to the other party no later than 60 days prior to any anniversary of the Effective Date." Defs.' App. 65, License Agreement Section §14(b).  The License Agreement specifies that the "Effective Date" is October 1, 2011.  *See* Pl.'s App. 91 ("The

**Memorandum Opinion and Order - Page 5**

License Agreement ('Agreement'), executed by the parties as specified on the execution lines below and effective as of October 1, 2011 ('Effective Date') . . . .").

According to Sara Lee, the first anniversary of the Effective Date was October 1, 2012, which represents a lapse of one-year from the Effective Date.  Based on this, Sara Lee argues that, as to the first anniversary of the Effective Date, the License Agreement permitted it to terminate the agreement no later than August 1, 2012, which is 60 days prior to October 1, 2012.  In other words, August 1, 2012, represented the last date on which the Licence Agreement permitted either party to terminate the agreement under Section 14(b). Because Sara Lee terminated the agreement on November 18, 2011, prior to August 1, 2012, it maintains that it did not breach the License Agreement. *See* Defs.' App. 98, Immell Decl., Ex. 21 (showing a letter, dated November 18, 2011, from Sara Lee's Senior Vice President terminating the License Agreement pursuant to Section 14(b) of the contract); Pl.'s Resp. 6 ("Sara Lee unilaterally cancelled the Agreement on November 18, 2011 . . . .").[1]

Plaintiff argues that this provision is ambiguous and asserts that Mr. Schmitz and his counsel thought the provision referred to the specific term of years defined in the contract and not the broader interpretation espoused by Defendant.  Particularly, the License Agreement included an initial term of five years to conclude on December 31, 2016, and an additional term of three years upon an automatic renewal.  Defs.' App. 62, License Agreement Section § 7.  Thus, Plaintiff considers the

---

[1] Although Plaintiff moves to strike this portion of the Immell declaration and its appendices, the parties do not dispute the actual termination date of the License Agreement.  *See*  Pl.'s Resp. 6 ("Sara Lee unilaterally cancelled the Agreement on November 18, 2011 . . . .").  Accordingly, the court **denies** Plaintiff's Motion to Strike to the extent it relates to the termination date.

term "anniversary" to refer to the first term of five years and the renewal term of three years and "not to the annual anniversary of the Effective date." Pl.'s Mot. Summ. J. 9.

Plaintiff next argues that inclusion of the word "any" in the phrase "any anniversary" creates ambiguity. According to Plaintiff, an annual right of unilateral termination without cause would hardly be the "slight revision" that Sara Lee represented. If "any anniversary" does not provide for an annual termination right, the only other plausible interpretation is the one contemplated by Plaintiff. This interpretation considers the termination clause to apply only to the anniversary of the first five years of the contract and the second anniversary of an additional three years. Defs.' App. 338-39, Schmitz Dep. 71:15-72:23.[2]

In a conclusory manner, Plaintiff also asserts that Sara Lee's interpretation of Section 14(b) potentially renders the License Agreement unenforceable for failure of consideration as an executory contract and that Sara Lee abused its superior bargaining position.[3]

In its reply, Sara Lee argues that the phrase "any anniversary" does not create the ambiguity Plaintiff contends that it does. According to Sara Lee, each year marks an anniversary of the

---

[2] Plaintiff additionally argues that, had the drafters wanted to incorporate Defendant's interpretation of the contract, they would have used different terms to do so. The License Agreement defines the term "Contract Year," as "each twelve (12) month period during the Term following the Effective Date of this License Agreement." Pl.'s App. 91. According to Plaintiff, if Sara Lee intended to allow for termination within the first year of the License Agreement, it could have included the term "Contract Year" in the termination provision. Elsewhere in the License Agreement, the parties use the term "Contract Year" to describe the obligations of the parties within the first year. *See* Pl.'s App. 95, License Agreement § 6(d) ("During the first Contract Year of the Agreement . . . ."). Sara Lee specifically contends that the terms in Section 14(b) are not ambiguous. According to Sara Lee, the term "Contract Year" means "*each* twelve (12) month period . . .," and defines the parties' obligations for a twelve month period of time. Defs.' App. 59. Sara Lee further contends that "Contract Year" refers to a length of time and was not appropriate for Section 14(b).

[3] Plaintiff also argues that Sara Lee drafted 14(b) alone and therefore the ambiguities in the contract must be construed against Sara Lee. Pl.'s Resp. 11 (citing *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (Ill. 1998) ("[A]ny ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision."). This argument is only relevant if the court determines that the contract is ambiguous, which, for the reasons explained in the following sections, the court determines that it is not.

Effective Date.  *See* Sara Lee's Reply 2 ("[T]here are *five* anniversaries of the Effective Date during the Initial Term of the License Agreement, and *three* additional anniversaries of the Effective Date during the Renewal Term.").

Ultimately, Sara Lee concludes that Plaintiff fails to offer a reasonable construction of Section 14(b)  and that the termination provision is unambiguous.  Sara Lee's Reply 2 (citing *Bourke*, 159 F.3d at 1036).  Sara Lee argues that the contract is not one-sided because the provision allows either party to terminate.  Moreover, Sara Lee contends that it did not abuse a superior bargaining position, as a sophisticated law firm represented Plaintiff and approved of Section 14(b)'s language.  *See* Defs.' App. 337, Schmitz Dep. at 69:5-11.

To prevail on a breach of contract claim under Illinois law, Plaintiff must show: "(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff." *Priebe v. Autobarn, Ltd.*, 240 F.3d 584 (7th Cir. 2001).

The first question the court must decide is whether the termination provision in Section 14(b) is ambiguous.  If it is unambiguous, "those terms will control the rights of the parties."  *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (Ill. 1998) (citation omitted); *see also Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (Ill. 1999) (" If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence.") (citation omitted).  Only if the provision is ambiguous does the court resolve the ambiguity against the drafter of the disputed provision, as Plaintiff requests that the court do here. *See Gleason*, 230 Ill.2d at 462.  Language in a contract is ambiguous if it "is susceptible to more than one meaning . . . ."  *Air Safety*, 185 Ill. 2d at 462.  More precisely, "[i]n Illinois, '[a]n instrument is

ambiguous only if the language used is reasonably or fairly susceptible to having more than one meaning, but it is not ambiguous if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract.'" *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) (citation omitted). "A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms." *Id.* (citation and quotation marks omitted).

Under Illinois law, "the goal of contract interpretation is to ascertain the parties' intent" by considering "the plain and ordinary meaning of the contract language." *Aeroground, Inc. v. Centerpoint Properties Trust*, 738 F.3d 810, 813 (Ill. 2013) (citation and internal quotation marks omitted). The court "must construe the contract as a whole, viewing each part in light of the others" and "must seek to give effect to each clause and word used, without rendering any terms meaningless." *Id.* (citation and quotation marks omitted). With these rules of contract interpretation controlling, the court begins its analysis.

The contract is unambiguous.[4] Section 14(b) allows for termination 60 days prior to *any* anniversary of the Effective date. "Anniversary" means the yearly occurrence of the date of a past event. *See* Merriam-Webster's Collegiate Dictionary 50 (11th ed. 2004) (defining anniversary as "the annual recurrence of a date marking a notable event . . . ."); The American Heritage Dictionary 72 (5th ed. 2011) (defining anniversary as "[t]he annually recurring date of a past event, as of personal or historical importance . . . .") *see also Laport v. MB Fin. Bank, N.A.*, 983 N.E.2d 1055,

---

[4] Plaintiff asserts that Mr. Schmitz's deposition testimony is unambiguous regarding his and his counsel's interpretation of Section 14(b). As the court previously stated, that the parties disagree on the meaning of the term "anniversary" in the termination provision does not render the contract ambiguous. *Bourke*, 159 F.3d at 1036 ("A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms.") (citation and quotation marks omitted).

1059-60 (Ill. App.   1st Dist. 2012) ("[A]n undefined term in a contract will be given its plain and ordinary meaning, which is found in its standard dictionary definition.") (citation omitted); *Madero v. Peters Engineering, Inc.*, No. 12-50157, 2015 WL 2220727, at *4 (N.D. Ill. May 12, 2015) (stating the same) (citation omitted).   The word "any" means that the License Agreement contemplates multiple anniversaries commemorating the "Effective Date" of October 1, 2011.   *See* Defs.' App. 59, License Agreement 1.   Thus, Sara Lee was permitted to terminate the contract if "it provide[d] written notice to [Jacked Up] no later than 60 days prior to *any* anniversary of the Effective Date." Pl.'s App. 97, License Agreement § 14(b) (emphasis added).

Plaintiff offers a strained interpretation of the termination clause in an attempt to overcome the clear and unambiguous language therein contained.   Plaintiff requests that the court interpret "any anniversary" to refer to the anniversary of the initial term and anniversary of the renewal term.   This interpretation is wholly unsupported by the termination clause.   Section 14(b) allows for termination on *any* anniversary of the *Effective Date*.   Nowhere does it limit the termination to the term dates of the contract.

Additionally, Section 7, which sets forth the initial and renewal terms, states that it is "subject to the termination provision of this Agreement (the 'Initial Term')."   *See* Defs.' App. 62, License Agreement § 7.   Thus, the License Agreement makes the renewal provision subject to the rights granted in the termination provision.   The termination provision, however, does not limit its application to the terms set forth in Section 7.

Plaintiff argues that inclusion of the word "any" renders Sara Lee's interpretation ambiguous. If the termination clause means what Plaintiff proposes, then *any* anniversary would actually mean either of the *two* anniversaries    the anniversary after the five-year initial term and the anniversary

**Memorandum Opinion and Order - Page 10**

after the three-year renewal term.   Thus, it is Plaintiff's unreasonable interpretation that is unsupported by inclusion of the word "any."

Sara Lee's interpretation of the termination clause in Section 14(b) does not render other sections or clauses meaningless.   Plaintiff argues that Defendant's interpretation of Section 14(b) renders Section 14(c) meaningless.[5]  Plaintiff does not expound upon this argument beyond making this bare assertion.   Section 14(b), however, does not render Section 14(c) meaningless.   Section 14(c) describes the required notice to terminate the License Agreement under Section 14(a).   Section 14(a) allows for termination upon a material breach of either party.   If either party commits a material breach, "the other party may upon ninety (90) days prior written notice, terminate the Agreement, provided, however, that the Agreement shall not be terminated if the breaching party cures the breach within said ninety (90) days after receipt of said notice." Defs.' App. 64-65, License Agreement § 14(a).   Thus, this section contemplates termination upon a material breach, and it provides the breaching party an opportunity to cure such a breach to avoid a termination of the contract.

Section 14(b) admittedly provides a greater right of termination.   Even if there is no breach, both parties have the opportunity to terminate the agreement.   That Section 14(b) provides both parties with greater rights than Section 14(c) does not render Section 14(c) superfluous, as Section

---

[5] Section 14(c) provides the following:

The notice required in this Section shall include a description of the event giving rise to Licensor's right to terminate and a description of the facts underlying Licensor's belief that said event occurred 'knowingly,' 'intentionally' or 'fraudulently' as the case may be.   Upon termination of this agreement pursuant to this Section 12(a), Licensee's right to use the Licensed Marks pursuant to this Agreement shall immediately cease . . . .

Defs.' App. 65, License Agreement § 14(c).

**Memorandum Opinion and Order - Page 11**

14(c) also contemplates providing the breaching party a period of time to cure the breach before the License Agreement terminates. Thus, each subsection performs an independent function, and neither is incompatible with the other.

Likewise, Section 14(b) does not render Section 7 meaningless. Section 7 defines the initial five-year term and the automatic renewal term for three years. Section 7 states that the License Agreement automatically renews for three years, "unless either party provides written notice of termination to the other party at least One Hundred and Eight[y] (180) days prior to the expiration of the Initial Term stating their election to terminate the Agreement at the end of the Initial Term." Defs.' App. 62, License Agreement § 7. Section 14(b) does not render this section superfluous, because this provision in Section 7 allows the party to end the agreement after the initial five year term and decline to automatically renew for three years.

More importantly, Section 7 explicitly states that the initial term is "subject to the termination provisions of this Agreement . . . ." Defs.' App. 62, License Agreement § 7 ("The Agreement shall remain in full force and effect until December 21, 2016, *subject to the termination provision of this Agreement* (the 'Initial Term').")." Thus, Section 7 unequivocally incorporates the termination provisions in Section 14(b) and thereby acknowledges that the License Agreement provides the parties with a right to terminate the agreement outside the expiration of the initial term and the renewal term. Ultimately, Section 14(b) and Section 7 are not incompatible and each serves an independent purpose in the contract.

Plaintiff also argues that Sara Lee abused its superior bargaining power to include this provision and, as an aside, alludes to the possibility that the contract is an executory contract without consideration. This argument is unsupported by the facts of this case. On the one hand, Plaintiff

**Memorandum Opinion and Order - Page 12**

argues that the contract is not supported by consideration, and, on the other hand, its seek to enforce it as a binding contract.  Plaintiff readily acknowledges the validity of the License Agreement in its attempt to recover damages.  Essentially, Plaintiff is seeking favorable treatment from the court to protect it from a provision within the bargained-for contract.  Accordingly, Plaintiff is not, in truth, arguing that the contract is unsupported by consideration.  It is attempting to enforce the License Agreement as a valid contract on the whole, while, at the same time seeking to excise one agreed-upon provision in the License Agreement that ended up being less favorable to it.

While Sara Lee proposed Section 14(b) a week before the parties signed the contract, Jacked Up, nevertheless, signed the License Agreement and agreed to be bound by the provisions therein set forth.  Plaintiff was also represented by a law firm, capable of warning its client of the risks associated with the agreed-upon termination provision.  *See* Defs.' App. 337, Schmitz Dep. (answering in the affirmative to Defendant's counsel's questions concerning whether a lawyer represented him and advised him of the agreement's terms).

Even assuming *arguendo* Plaintiff's interpretation of the License Agreement is correct, Sara Lee did not breach the contract.  By way of summary, Plaintiff argues that "any anniversary" refers to "the anniversary date of the terms of contracts five and three year term periods" and "not to the annual anniversary of the Effective date."  Pl.'s Mot. Summ. J. 9.  Thus, if the court were to replace "any anniversary" with Plaintiff's interpretation of the phrase, the termination clause in Section 14(b) would read as follows: "Either party shall have the right to terminate this Agreement if it provides written notice to the other party no later than 60 days prior to *the fifth initial term or the third renewal term*."  Even accepting Plaintiff's interpretation of the termination clause, Sara Lee, did not

breach the contract.  It provided notice no later than 60 days *prior to* the initial term, which ended after five years.

Ultimately, the portion of Section 14(b) that allowed for Sara Lee's termination of the contract is not the disputed phrase "any anniversary" as Plaintiff contends; rather, it is the language permitting either party to terminate the agreement no later than 60 days *prior* to any anniversary of the Effective Date.  Under Sara Lee's interpretation, there is approximately a 10-month window every year in which either party can terminate the provision.  Under Plaintiff's interpretation, there is approximately a four-year-and-10-month window in which either party can terminate the provision.  This specifically represents the amount of time that is prior to the anniversary of the initial term but also 60 days before the fifth anniversary of the Effective Date.  While this provision afforded the parties with long periods of time in which they could terminate, such an interpretation applies to both Plaintiff's and Sara Lee's interpretation of the contract, and the court will not rewrite the parties' contract.  *See Johnson v. Servicemaster Indus., Inc.*, 254 Ill. App. 3d 353, 361 (Ill. App.   1st Dist. 1992) ("The court cannot remake a contract to give a litigant a better bargain than he himself was satisfied to make.") (citation omitted).

Considering the contract as a whole, the court determines that Section 14(b) is unambiguous. Sara Lee terminated the contract in accordance with the plain language of Section 14(b), as it provided Jacked Up with notice of its termination more than 60 days before the anniversary of the Effective Date.  Pl.'s App. 9-10, Schmitz Decl. 9-10 ("Around October 21, 2011. . . Mr. Immell stated that . . . the License Agreement would not be part of the sell [sic] to Smuckers . . . .").

The court determines that there is no genuine dispute of material fact regarding Sara Lee's termination of the License Agreement, and the court will grant Sara Lee's motion for summary judgment as to Plaintiff's claim for breach of contract.

### B.      Breach of Fiduciary Relationship

Both parties apply Texas law to Plaintiff's extra-contractual claims, and the court evaluates the claims accordingly.  *See* Def.'s Mot. Summ. J. 13-14 (applying Texas law but noting that the same is true under Illinois law); Pl.'s Mot. Partial Summ. J. 26 (applying Texas law); Pl.'s Resp. 12-13.[6]

Sara Lee contends that it is entitled to summary judgment on Plaintiff's claim for breach of fiduciary duty, contending that the parties do not have a fiduciary relationship.  Plaintiff alleges that Sara Lee "breached [its] fiduciary duty by undertaking actions to harm [Jacked Up]'s business, by misappropriating [Jacked Up]'s trade secrets and other confidential and proprietary information and providing it to Smucker" and by failing to act in the best interest of Jacked Up.  Pl.'s Sec. Am. Compl.  ¶¶ 61-62.

The elements for a breach of fiduciary duty claim under Texas law are: "(1) a fiduciary relationship between the plaintiff and the defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Navigant Consult., Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.   Dallas 2006, pet. denied)).  "It is well

---

[6] The choice-of-law provision in the License Agreement does not cover the entire relationship between the parties; thus the court analyzes the tort claims separately. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726-27 (5th Cir. 2003).  The parties apply Texas law to all of Plaintiff's extra-contractual claims against Sara Lee.

settled that 'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'" *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176-77 (Tex. 1997)). When "the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court." *National Med. Enters. v. Godbey*, 924 S.W.2d 123, 147 (Tex. 1996) (citation and internal quotation marks omitted).

"Texas law recognizes two types of fiduciary relationships. The first, a formal fiduciary relationship, 'arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers.'" *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007). The second is an informal fiduciary relationship that "may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one." *Id.* (quoting Jones, 196 S.W.3d at 449) (internal quotation marks omitted).

"[T]o give full force to contracts, [Texas courts] do not create such a relationship lightly." *Id.* at 177. "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998).

Plaintiff cites *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980), to assert that a confidential relationship "exists where a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interest of the one reporting confidence." Pl.'s Resp. 13 (internal citation and quotation marks omitted). Plaintiff argues that a special relationship of trust and confidence existed between Jacked Up and Sara Lee.

Plaintiff summarizes its argument as follows:

As the dominant partner in the parties' business relationship who owed a duty of good faith and fair dealing to Jacked Up, Sara Lee developed a "confidential" relationship with Jacked Up sufficient to create a fiduciary relationship between the two. It then breached its duties by reneging on the Licensing Agreement, lying to Jacked Up, and devastating it[s] business. At the very least, a fact issue exists concerning the existence of this relationship and summary judgment is precluded.

Pl.'s Resp. 14. Plaintiff, however, fails to acknowledge the additional requirements imposed by law, mainly: "the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp.*, 964 S.W.2d at 287.[7]

Plaintiff argues that Sara Lee's alleged breach of trust derives from both the mutual nondislcosure agreement entered into prior to the parties' formation of the License Agreement and the License Agreement itself. *See* Defs.' App. 34, Mutual Non-Disclosure Agreement; Pl.'s App 2, Schmitz Decl. 2; *see also* Pl.'s Resp. 13 ("This relationship is clear early in the parties relationship, as they entered into a mutual non-disclosure agreement designed to facilitate, under a relationship of trust, the exchange of confidential information.").

The mutual nondisclosure agreement does not create a fiduciary relationship between the parties. *See Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005)[8]; *Wellogix v. Accenture, LLP*, 788 F. Supp. 2d 523, 545 (S.D. Tex. 2011) ("The Mutual Nondisclosure Agreement is merely an

---

[7] Plaintiff additionally cites *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 698 (Tex. App.—Fort Worth 2006, pet. denied). This case does not affect the court's analysis and further confirms that "[a] person is justified in placing confidence in the belief that another party will act in his best interest only where he is accustomed to being guided by the judgment or advice of the other party and there exists a long association in a business relationship as well as personal friendship." *Id.* (footnote omitted).

[8] In *Meyer*, the Texas Supreme Court determined that the defendant's work on prior projects did not establish a preexisting relationship for purposes of forming a fiduciary relationship, because "[t]hese earlier projects were arms-length transactions entered into for the parties' mutual benefit, and thus do not establish a basis for a fiduciary relationship." *Meyer*, 167 S.W.2d at 331 (citation omitted). The same is true in this case. Jacked Up and Sara Lee entered the mutual nondisclosure agreement for the benefit of both parties, and it was an arm's length agreement.

agreement to keep certain proprietary information confidential.").[9]  Under these circumstances, the signing of a mutual nondisclosure agreement is not sufficient basis to find a preexisting relationship.

The License Agreement also does not create a fiduciary relationship, as there is no evidence that Jacked Up and Sara Lee had a preexisting relationship to support a fiduciary relationship. The record is devoid of any evidence showing that the parties shared a special relationship *prior to and apart from* the License Agreement.  Plaintiff even acknowledges that representatives from Jacked Up and Sara Lee met for the first time in April 2011, which subsequently led to the parties signing the mutual nondisclosure agreement and the License Agreement.  *See* Pl.'s App. 1, Schmitz Decl. 1 ("It was at [the McLane National Tradeshow] that Joe Schmitz, principal of [Jacked Up], first met Sara Lee Corp . . . .").  From there, the parties discussed a licensing agreement. *Id.* ("It was at this show that Mr. Peeples and Mr. Whitaker first inquired about licensing the 'Jacked Up' brand on SL products and creating a 'Jacked Up' line . . . .").  Accordingly, by Plaintiff's own admission, the parties did not have a relationship separate and apart from the License Agreement.

Plaintiff stresses that Jacked Up trusted Sara Lee.  *See* Pl.'s Resp. 13 ("This relationship is clear early in the parties relationship, as they entered into a mutual non-disclosure agreement designed to facilitate, under a relationship of trust, the exchange of confidential information. Sara Lee betrayed that trust.").  "[T]he fact that [Jacked Up] trusted [Sara Lee] does not transform their

---

[9] *Wellogix* further states:

The Mutual Nondisclosure Agreement, the Marketing Alliance Agreement, the two Teaming Agreements were all agreements between Accenture and Wellogix to jointly exchange information with each other in order to develop business opportunities to which both would contribute particular expertise and from which both would benefit. As such, these agreements are "arms-length transactions entered into for the parties' mutual benefit, and thus do not establish a basis for a fiduciary relationship." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex.2005) (citing *Associated Indem. Corp. v. CAT Contr.*, 964 S.W.2d 276, 288 (Tex.1998)).

business arrangement into a fiduciary relationship."  *Meyer*, 167 S.W.2d at 331 (citing *Morris*, 981

S.W.2d at 674) ("[M]ere subjective trust does not . . . transform arm's-length dealing into a fiduciary

relationship.") (internal citation and quotation marks omitted).

Not only is the record devoid of any evidence regarding a prior relationship between the

parties, but the License Agreement also expressly disclaims the existence of a formal relationship.

The parties agreed that, "[n]either party is an agent or employee of the other, nor shall either party

in any event be liable for the other's acts or omissions except as expressly provided herein."  Def.'s

App. 60, License Agreement § 4.[10]

Plaintiff additionally asserts that Sara Lee owed it a duty of good faith and fair dealing under

Illinois law.  Pl.'s Resp. 13 (citing *Indus. Specialty Chems., Inc. v. Cummins Engine Co.*, 902 F.

Supp. 805, 811 (N.D. Ill. 1995)).  "Although a fiduciary duty encompasses at the very minimum a

duty of good faith and fair dealing, the converse is not true.  The duty of good faith and fair dealing

. . . does not encompass the often more onerous burden . . . attributed to a fiduciary duty."  *Griffin*

*v. Box*, 85 F.3d 625 (5th Cir. 1996) (citing *Crim Truck & Tractor Co. v. Navistar Intern. Trasnp.*

*Corp.*, 823 S.W.2d 591, 593-94 (Tex. 1992) (superseded by statute on other grounds); *see also*

*Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 113 (Ill. App.   1st Dist. 1993) ("Parties

---

[10] Section 4 continues:

> This Agreement does not, and shall not, be deemed to make any party hereto the agent, partner, joint
> venturer or legal representative of any other party for any purpose whatsoever.  Neither the Licensor
> or Licensee shall have the right or authority to assume or create any obligations or responsibility
> whatsoever, express or implied, on behalf of, or in the name of, the other, or to bind the other in any
> respect whatsoever, except as may be herein provided.

Defs.' App. 60, License Agreement § 4.  Plaintiff contends that "[i]t is disingenuous at best to suggest that Sara Lee
should benefit from its own self-serving behavior in inserting into the Licensing Agreement a provision disclaiming any
fiduciary relationship after actively soliciting and then betraying the trust of Jacked Up."  Pl.'s Resp. 14 (footnote
omitted).  Plaintiff, however, agreed to be bound by the provision set forth in Section 4 of the License Agreement.

**Memorandum Opinion and Order - Page 19**

are entitled to enforce the terms of negotiated contracts to the letter without being mulcted for lack of good faith."); *Wausau Underwriters Ins. Co. v. Pronto Staffing Servs. Inc.*, No. 11-928, 2011 WL 6016284, at *2 (N.D. Ill. Dec. 2, 2011) (explaining that "[t]he duty of good faith and fair dealing flows from the contractual relationship between parties" and "[i]t thus does not arise from a fiduciary relationship"). Thus, Plaintiff's contention that Sara Lee breached its duty of good faith and fair dealing does not create a genuine dispute of material fact.

In summary, Plaintiff argues that Sara Lee had a fiduciary duty toward Jacked Up but presents no evidence to establish that the parties had a preexisting relationship prior to contracting for the License Agreement. With no evidence of a preexisting relationship, Plaintiff's claim for breach of the fiduciary duty fails as a matter of law. Accordingly, the court will grant Sara Lee's Motion for Summary Judgment as to this claim.[11]

### C.    Fraud

Sara Lee argues it is entitled to summary judgment on Plaintiff's claim for fraud. Jacked Up's Second Amended Complaint alleges that "Defendant were [sic] trusted vendors and fiduciaries occupying positions of confidence and trust at [Jacked Up]." Pl.'s Sec. Am. Compl. ¶ 65.

Sara Lee contends that Jacked Up "relies only on the existence of a fiduciary relationship to support its fraud claim" and that "this is a claim for constructive fraud, not common law fraud."

---

[11] The court notes that it would reach the same result if it applied Illinois law. Under Illinois law, "the fiduciary obligation must be predicated upon [a] pre-existing relationship of trust between the parties, or if the alleged fiduciary relationship is to be based on the transaction in question, a showing that the defendant . . . at least impliedly accepted the trust and confidence plaintiff sought to repose in him." *Maguire v. Holcomb*, 169 Ill.App.3d 238, 242-43 (Ill. App. 1988). Plaintiff has the "burden of establishing [the fiduciary relationship] by clear and convincing evidence." *Polansky v. Anderson*, No. 04-3526, 2007 WL 4162807, at *7 (N.D. Ill. Nov. 20, 2007). Ultimately, Plaintiff has presented no evidence in the record to demonstrate that the relationship between the parties was anything but an arm's length transaction, and "[d]espite [Jacked Up's] reliance on [Sara Lee] . . . [it] has not established that Defendant[] dominated and controlled [its] decisions in the transaction to the extent necessary to create a fiduciary obligation." *Id.* at *8 (citations omitted).

Def.'s Mot. Summ. J. 15 (citations omitted) (emphasis omitted).   Because constructive fraud "is virtually the same tort as breach of fiduciary duty," Sara Lee argues it is entitled to summary judgment on the same basis as Plaintiff's breach of fiduciary duty claim.  *Id.* (citing *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, No. 99-1254, 2001 WL 124951, at *6 (N.D. Tex. Feb. 9, 2001)); *See also Heden v. Hill*, 937 F. Supp. 1230, 1238 (S.D. Tex. 1996) ("Constructive fraud is defined as a breach of a legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others.") (citing *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964)).

Plaintiff argues that the record supports a claim for common law fraud under Texas law. Plaintiff's argument misses the mark.  The court agrees that Plaintiff has submitted evidence in the *record* that supports its claim for fraud.  Plaintiff's Second Amended Complaint, however, only alleges facts regarding Sara Lee's relationship with Jacked Up as a trusted fiduciary.  *See* Second Am. Compl. ¶¶ 64-67 ("The Defendant were trusted vendors and fiduciaries occupying positions of confidence and trust at JU."; "The Defendant abused their positions of trust . . . ."; "The Defendant violated the confidences bestowed upon them as a trusted vendor . . . .").  Plaintiff has not pleaded a claim for common law fraud.

While Plaintiff argues that there is evidence in the record supporting its claim for fraud, it must first establish that its Second Amended Complaint alleges a claim for which the court will even consider the supplemental evidence in the record.  Plaintiff ultimately only pleaded a claim for constructive fraud. *Chuck Wagon Feeding Co. v. Davis*, 768 S.W.2d 360, 363 (Tex.App.   El Paso 1989, writ denied) ("As a general rule, specific allegations take precedence over more general allegations in the same pleading: 'If a party pleads generally and then goes further and pleads

**Memorandum Opinion and Order - Page 21**

specifically on the same subject, the specific allegations control. *The pleader cannot rely on the general but is confined to his specific allegations.*'") (citing *Monsanto Co. v. Milam*, 494 S.W.2d 534, 536 (Tex. 1973) (emphasis added).

Plaintiff's specific allegations relate to a claim for constructive fraud. Constructive fraud presupposes a fiduciary duty, and the court has already determined that there was no fiduciary relationship between Jacked Up and Sara Lee. *See Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. App.   Fort Worth 2004, pet. denied) ("Constructive fraud is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship.") (citing *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964)).   Accordingly, there is no genuine dispute of material fact regarding Plaintiff's claim for constructive fraud, and Sara Lee is entitled to judgment as a matter of law. The court will grant Sara Lee's motion for summary judgment as to Plaintiff's claim for constructive fraud.[12]

### D.   Fraud in the Inducement

Sara Lee also argues it is entitled to summary judgment on Jacked Up's claim for fraudulent inducement because Plaintiff fails to satisfy the basic pleading requirements under Federal Rule of Evidence 9(b) and additionally argues that, notwithstanding Plaintiff's pleading deficiencies, Jacked Up has no evidence to support its claim for fraudulent inducement. The court evaluates each of these arguments in turn.

---

[12] The court notes that it would reach the same result if it applied Illinois law, because under Illinois law a claim for constructive fraud "requires the existence of a confidential or fiduciary relationship." *Joyce v. Morgan Stanley & Co., Inc.*, 538 F.3d 797, 800 (7th Cir. 2008).

### 1.      Rule 9(b) Arguments

Defendant argues that Plaintiff failed to plead with specificity its claim for fraudulent inducement. Plaintiff argues that Sara Lee is precluded from asserting 12(b)(6) arguments at this stage of the litigation, especially because the deadline to amend pleadings has long expired.  *See* First Am. Scheduling Order 1 (setting the deadline for joinder or amendment of pleading for January 10, 2014).

 Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity.  *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003).

The court determines that, given the circumstances of this case, Sara Lee's arguments regarding Rule 9(b) are unavailing.  Defendant cites *Whalen v. Carter*, 954 F.2d 1087 (5th Cir. 1992), to support its argument that "the failure to state a claim is the functional equivalent of the failure to raise a genuine issue of material fact." 945 F.2d at 1098 (internal quotations and citations omitted).

*Whalen* is distinguishable from the facts of this case.  In *Whalen*, defendants moved for dismissal under Federal Rule of Evidence 12(b)(6), and the court stayed discovery in the case.  954 F.2d at 1098 ("[T]he district court denied them an opportunity to conduct reasonable discovery in

**Memorandum Opinion and Order - Page 23**

this case."). The court subsequently refused to reopen discovery, but it ordered one of the defendants to convert its motion to dismiss into a motion for summary judgment and then granted summary judgment. The Fifth Circuit determined that the plaintiff's failure to satisfy the requirements in Rule 9(b) allowed for summary judgment and affirmed the district court as to this holding.

Here, discovery has been conducted, and the record reflects evidence to support representations made to Jacked Up. The court cannot undo the discovery conducted and the materials presented to the court in the record. Plaintiff cites Federal Rules of Civil Procedure 12(d) and 56(c) to argue that the court must consider the materials in the record. Pl.'s Surreply 2 n.3; *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); Fed. R. Civ. P. 56(c) ("The court need consider only the cited materials, but it may consider other materials in the record.").

The time to amend pleadings has long passed. Defendant chose not to file a motion to dismiss and waited to raise Rule 9(b) arguments until four years after Plaintiff filed its Original Complaint. Without reaching a decision as to whether Plaintiff satisfies the heightened pleading requirements of Rule 9(b), the court notes that Plaintiff has stated a claim for fraudulent inducement to satisfy the requirements of Rule 12(b)(6). Defendant also has not suffered any prejudice, as it has notice of Plaintiff's arguments and has responded to the fraud allegations in its summary judgment briefing. On the other hand, Plaintiff would suffer prejudice if the court accepted this argument.

Unlike Plaintiff's fraud claim, for its fraudulent inducement claim, the Second Amended Complaint and record align, and Plaintiff did not attempt to submit evidence in the record beyond

what was alleged in its pleadings.  Specifically, Plaintiff alleges the following: "Defendant's acts constitute fraudulent inducement under Texas common law."  Pl.'s Sec. Am. Compl. ¶ 70.  This distinguishes the two claims, and, therefore, the court cannot dismiss Plaintiff's fraudulent inducement claim for the same reasons as its fraud claim.  Therefore, the court will continue its analysis and determine whether there is a genuine dispute of material fact regarding the claim for fraudulent inducement.

### 2.        Whether There is a Genuine Dispute of Material Fact

Defendant also argues that Jacked Up lacks evidence to support its claim for fraudulent inducement. Plaintiff contends that it adequately describes the representations Sara Lee made to Jacked Up and has evidence to support its claim.

Fraudulent inducement is "'a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties.'" *Bohnsack v. Varco, LP*, 668 F.3d 262, 277 (5th Cir. 2012) (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001)).  In other words, fraudulent inducement additionally requires that the defrauded party be induced to enter into a binding agreement as a result of the fraud.

To prevail on its claim for fraudulent inducement, Plaintiff must first satisfy the elements of fraud. The elements of fraud in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff

injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).[13]

Plaintiff's Second Amended Complaint alleges that "Defendant induced JU into signing the Agreement through . . . various assurances regarding the terms of the Agreement, the commitment to the JU products, and the confidential and proprietary information and trade secrets that were developed, as well as the discussions with Smuckers." Pl.'s Sec. Am. Compl. ¶ 71.  The court evaluates the alleged representations separately.

*a.    Representations Contradicted by the License Agreement*

The court determines that any representation relating to the terms of the License Agreement cannot support a claim for fraudulent inducement as a matter of law.  Sara Lee argues that any reliance by Jacked Up on Sara Lee's alleged representation that it would provide "a multi-year licensing deal that would enable Jacked Up to recoup its development costs several times over" is unreasonable as a matter of law.  Def.'s Reply 10 (quotation marks and citation omitted); *see also* Pl.'s App. 2, Schmitz Decl.  2 (stating that "Mr. Schaillee and Drake informed [Jacked Up] that [Sara Lee] considered [Jacked Up] a partner in the development of these energy products . . . and that [Sara Lee] was committed to signing a multi-year agreement would allow [sic] that would enable [Jacked Up] to recoup its development costs several times over.").

---

[13] The elements for fraudulent inducement under Illinois law are essentially the same as Texas law.  *See Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) ("In Illinois, fraudulent inducement requires proof of five elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.") (quotation marks and citations omitted).

**Memorandum Opinion and Order - Page 26**

"Texas courts have repeatedly held, a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *National Property Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015). "This is particularly true when the party had a reasonable opportunity to review the written agreement but failed to exercise ordinary care to do so." *Id.* (citation omitted).

Jacked Up is not justified in relying on any oral misrepresentations regarding the License Agreement's unambiguous terms. The court determines that Sara Lee's alleged representations regarding a mutli-year agreement to recoup costs along with any alleged promise to not terminate are contradicted by the express terms of the License Agreement. *See* Defs.' App. 64-65, License Agreement § 14(b).

The License Agreement permits termination if the terminating party "provides written notice to the other party no later than 60 days prior to any anniversary of the Effective Date." *Id.* at 64-65, License Agreement § 14(b). Moreover, the term provision of the License agreement explicitly states that the section is "subject to the termination provisions of the this Agreement . . . ." Defs.' App. 56, License Agreement § 7. An agreement to not terminate until Jacked Up recuperates its investment is at odds with the parties ability to terminate provided timely and proper notice is given to the other party.

Plaintiff argues that Sara Lee's alleged representations are not expressly contradicted by the License Agreement. The court determines, however, that any alleged oral representation that narrows the ability of either party to terminate the agreement is in direct opposition with the more generous termination provision in Section 14(b). In light of this termination provision, the court would have to modify the parties's contract to give legal effect to the alleged representations. *See*

*American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("But we may neither rewrite the parties' contract nor add to its language.") (citation omitted).

Lending support to this conclusion is Jacked Up's approval of the termination provision. *See* Pl.'s Resp. App. 87 ("We are fine with [the] proposed revisions to Section 14(b) (adding limited right for either party to terminate at anniversary dates of agreement) . . . ."). Although Jacked Up contests the meaning of the termination provision, the court in Section III(A), determined that Section 14(b) is unambiguous and allowed for termination by either party.

The court determines that, as to the representation relating to the terms of the License Agreement, and specifically relating to Plaintiff's ability to recoup its costs, there is no genuine dispute of material fact and the court will grant Sara Lee's Motion for Summary Judgment as to these specific representations.[14]

### b.  Other Representations

Plaintiff's Second Amended Complaint also asserts representations by Sara Lee that the court determines are separate and apart from the License Agreement.  Pl.'s Sec. Am. Compl. ¶ 71 ("Defendant induced JU into signing the Agreement through . . . various assurances regarding . . . the commitment to the JU products, and the confidential and proprietary information and trade secrets that were developed, as well as the discussions with Smuckers.").  The court proceeds with

---

[14] The court notes that it would reach the same result if it applied Illinois law.  "Where an alleged misrepresentation is directly contradicted by the terms of a contract and the plaintiff could have discovered the fraud, reliance on the misrepresentation is unreasonable as a matter of law." *Matland v. Loyola Univ. of Chicago*, No. 12-5165, 2012 WL 5949067, at *5 (N.D. Ill. Nov. 27, 2012) (citations omitted); *see also Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574-75 (7th Cir. 2001) ("As long as the complaining party could have discovered the fraud by reading the contract and had the opportunity to do so, Illinois courts have refused to extend the doctrine of fraudulent inducement  to invalidate contracts.") (citations omitted).

its analysis as to whether there is a genuine dispute of material fact regarding Plaintiff's fraudulent inducement claim and begins its analysis with the element of reliance.

To sustain a claim for fraudulent inducement, a plaintiff must demonstrate that he or she justifiably relied on the alleged misrepresentation giving rise to the claim.  *See Coastal Bank ssb v. Chase Bank of Texas, N.A.*, 135 S.W.3d 840, 843 (Tex. App.   Houston [1st Dist.] 2004, no pet.) ("A party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party.") (citations omitted).

The representations detailed in Mr. Schmitz's declaration include the following:

- Mr. Greg Immell represented that . . . SL would contract for a multi-year licensing deal that would enable JU to recoup its development costs several times over. JU relied on these statements and promises to create the products.[15]

- Again, SL represented that it was necessary to JU to create the trade dress for the product offerings to get the multi-year licensing deal, which would enable JU to recoup its development costs several times over.

- Mr. Schaillee and Drake . . . informed JU that SL considered JU a "partner" the development of these products, and that SL was committed to signing a multi-year agreement . . . that would enable JU to recoup its development costs several times over.

- Mr. Schaillee and Drake informed JU that while SL was splitting it[s] beverage business from its meat business, the company was not pursuing any other changes for CoffeeCo, that it was a very profitable business, and that the company planned to continue to operate it as a public traded company for the foreseeable future. . . . JU also relied on these representations to enter the License Agreement with SL.

---

[15] For the reasons explained in III(A), the termination provision in Section 14(b) contradicts this alleged representation, and, therefore, it is not a basis for Plaintiff's fraudulent inducement claim.

- During this visit, Mr. Immell and Mr. Baughman repeated many of the previous representations to me, which JU relied on to continue working on the Jacked Up products and ultimately enter the License Agreement with SL.

- On September 26, 2011 . . . SL, for the first time, requested new changes to the license agreement . . . SL represented that these changes [including the termination provision in Section 14(b)] were necessary in case "strategy changes or market conditions shift" and to "clarify" the parties intent.

- When asked for further clarification on change of control issue, SL represented that it was necessary "in the event North American Beverage is purchased by a third party company, that [acquiring] company would have the right to terminate the agreement with proper notification."

- When I presented these concerns and further questioned SL executives Mr. Drake and Mr. Immell about any intent to sell the North American Beverage, they represented to me that the company had no intent to sell the business and that it was not discussing any sale to any third party. . . . Having spend months and significant money developing the products and trade dress and based on the promises of SL of a multi-year agreement to recoup its investment, I agreed to sign the contract.

- While setting up at the NACS show, I was approached by a SL construction worker . . . . This man asked me, "So what do you think of the Sara Lee sale?" . . . I was immediately concerned and called Mr. Immell and Mr. Whitaker to inquire about the comment of a buyout . . . I demanded to know what was going on and informed both of them that I did not want to launch the SL Jacked Up products at the industry's largest trade show under the Jacked Up name if Sara Lee was selling the business and I did not get the assurance the License Agreement was part of the deal. . . . Shortly thereafter, I was told this worker misspoke, that Mr. Drake and Mr. Schaillee had no idea what the worker was talking about, that SL was not selling off[f] the business, that they reconfirmed the representations made to me, and that SL was committed to the full term of the License Agreement.

> forward.[16]   Based on these assurances, I allowed the launch to
> proceed. Without these assurances, I would not have allowed the
> launch to move forward.[17]

Pl.'s App. 2-4, 8-9, Schmitz Decl. ¶¶ 10, 12-14, 16, 19-20, and 31.

The court determines that any reliance on Sara Lee's alleged representations was unjustified.

"Determination of justifiable reliance turns on whether   given the fraud plaintiff's individual

characteristics, abilities, and appreciation of facts and circumstances at or before the time of the

alleged fraud   it is extremely unlikely that there is actual reliance on the plaintiff's part." *Quest*

*Exploration and Dev. Co. v. Transco Energy Co.*, 24 F.3d 738, 742 (5th Cir. 1994) (quotation marks

and footnote omitted).  As a "general rule," " parties are presumed to have notice of what they have

signed." *Id.* (footnote omitted); *see also Chase Agri-Credit Sys., Inc. v. Jack Spears Drilling Co.*,

No. 02-0252, 2003 WL 22880304, at *6 (N.D. Tex. Dec. 3, 2003) ("Defendants must also establish

reliance, and again, the presence of the written Agreement undercuts that element. . . . Although the

law is clear that a written contract does not always disprove the existence of justifiable reliance on

_____

[16] The court notes, based on a clear inference from Mr. Schmitz's declaration, that this alleged representation was made *after* the parties signed the License Agreement.  *See* Pl.'s App. 5, Schmitz Decl. ¶ 22 ("The deal was finalized around September 28, 2011 . . . ."); *Id.* ¶ 30-31 ("The 2011 NACS Show took place October 1 to 4 . . ." and "[w]hile setting up at the NACS Show, I was approached by a SL construction worker . . . .").   Mr. Schmitz states that these representations caused him to seek reassurances regarding Sara Lee's commitment to the term of the License Agreement and that, upon receiving such reassurances, he decided to proceed with the NACS show.  Thus, he does not contend that Sara Lee induced him into signing the contract with these representations; rather, he alleges that these representations caused him to proceed with the NACS show.

[17] Since the alleged representations in this paragraph came after the parties signed the License Agreement, they cannot support Plaintiff's claim for fraudulent inducement.  Plaintiff's Second Amended Complaint alleges only that "Defendant induced JU into *signing the Agreement* . . . ." Pl.'s Sec. Am. Compl. ¶ 71.  The representations in this last paragraph came after the parties signed the License Agreement and therefore are not part of the representations that allegedly induced Plaintiff into signing the contract.  *See Haas v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) ("Certainly there can be no breach of that duty when one is not induced into a contract.").   Moreover, Defendant moved to strike this portion of Mr. Schmitz's declaration regarding the representations that came after the construction worker mentioned a sale by Sara Lee. Because the court is not considering this representation in its analysis, this portion of Defendants' Motion to Strike is rendered moot.  The court notes, however, that it would reach the same result even if it considered this representation in its analysis.

**Memorandum Opinion and Order - Page 31**

prior oral representations as a matter of law . . . . whether such reliance is justified under the circumstances is a determination that must be established by evaluating the facts on a case-by-case basis.") (citation omitted).

Jacked Up agreed to the termination provision in Section 14(b) of the License Agreement, and, importantly, Sara Lee provided Jacked Up with the reason for proposing this provision. Sara Lee specifically informed Jacked Up that the contract needed the termination provision "in the event [the] North American Beverage [division] is purchased by a third party company, [and] that company would have the right to terminate the agreement with proper notification." *See* Pl.'s App. 4, Schmitz Decl. ¶ 20.[18]   This is precisely what happened: Smucker purchased Sara Lee's beverage unit and, as the acquiring company, decided not to adopt the License Agreement.[19]

---

[18] The court determines that Plaintiff had notice and opportunity to respond to the argument that reliance on Sara Lee's alleged representations regarding the sale of its business to a third party was unreasonable. To begin, when describing Sara Lee's alleged fraud, Plaintiff repeatedly cites its reliance on Sara Lee's representations and concludes that "based on promises of Sara Lee, Jacked Up agreed to sign the contract." Pl.'s Resp. 18. Additionally, in its Motion for Partial Summary Judgment, Plaintiff seeks summary judgment on its fraudulent inducement and asserts that it is entitled to judgment as a matter of law on this claim. *See* Pl.'s Mot. Partial Summ. J. 29 ("More importantly, had SL been forthright when JU questioned it about SL's desire to implement the last-minute changes to the agreement, JU would not have agreed to the last-minute changes, would not have signed the agreement, and would never have agreed to move forward with the launch of the Jacked Up products at the NACS show."). Thus, the court determines that Plaintiff had ample notice and opportunity to carry its burden to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim but failed to do so. *See Ragas*, 136 F.3d at 458.

[19] Plaintiff argues that Sara informed it that it planned to split itself into two parts: a beverage unit and a food unit but that it never disclosed the sale to Smucker. *See* Pl.'s Surreply 7. The e-mail cited by Mr. Schmitz in his declaration, however, clearly contemplates and alerts Plaintiff to the possibility of a sale to a third party. The relevant portion of the e-mail reads as follows:

> Change of control intent[—]our intent is to assign the agreement upon the splitting of the two companies to the newly formed Coffeeco (International Coffee and Tea Company[—]name TBD). *The new provision was in the even North American Beverage is purchased by a third party company, that company would have the right to terminate the agreement with proper notification.*

Defs.' App. 72 (e-mail from Greg Immell to Plaintiff's counsel) (emphasis added).

**Memorandum Opinion and Order - Page 32**

Jacked Up agreed to sign the License Agreement *after* it was told that the termination provision was needed in the event of a third party purchase.  Accepting Plaintiff's account of events as correct and assuming *arguendo* that Sara Lee represented that it was not selling its beverage division to a third party, Jacked Up's reliance on the alleged representations was unreasonable.  Plaintiff argues that Sara Lee never informed Jacked Up of its intent to sell the business to Smucker and instead informed Plaintiff that it had no intent to sell the business.  This does not, however, create a genuine dispute of material fact because Jacked Up agreed to include the termination provision in the License Agreement, knowing it was included to account for a hypothetical sale of Sara Lee's beverage division to a third party.  Thus, Jacked Up's express agreement to add the termination provision, knowing the specific purpose for including the provision, rendered any reliance on representations that Sara Lee was not selling this division unreasonable.  *Cf. Chase Agri-Credit Sys., Inc.*, 2003 WL 22880304, at *7 ("Nothing about Defendants' relationship with the salesman, of whose name they are not even certain, suggests any reason for them to rely on his representations over what was plainly written in the Agreement. Indeed, nothing about the circumstances of the signing is evidence that Defendants were justified in their reliance on anything other than the written Agreement itself."); *LeTouneau Techs. Drilling Sys., Inc. v. Normac Drilling, LLC*, 676 F. Supp. 2d 534, 545 (S.D. Tex. 2009) ("If [defendant] truly did rely on Ball's verbal representation about the untested top drives when it entered into a $90 million contract for a different product, for which it paid a down payment of more than $22 million, it was not reasonable to do so.").[20]

---

[20] The court additionally notes that the License Agreement includes a provision, stating that it "constitutes the entire agreement between the parties as to the subject matter hereof and no modifications or revisions thereof shall be of any force or effect unless the same are in writing and incorporated into a written amendment executed by the parties

Moreover, the court notes that a sophisticated law firm represented Jacked Up and advised it on matters involving the License Agreement.  *See* Defs.' App. 337, Schmitz Dep. 69:5-11 (explaining that Mr. Schmitz was represented by a lawyer when the parties negotiated the terms of the License Agreement); *cf. Quest Exploration and Dev. Co.*, 24 F.3d at 742 ("Both parties to this settlement were sophisticated and were represented by attorneys.") (footnote omitted); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 180 (Tex. 1997) ("In negotiating the release, highly competent and able legal counsel represented both parties and, as we have said above, the parties were dealing at arm's length.").

---

hereto."  Defs.' App. 67, License Agreement § 20(c).  Courts have held that these disclaimers similar to the one found in this License Agreement preclude the reliance necessary for a fraudulent inducement claim.  *See Jacuzzi, Inc. v. Franklin Elec. Co., Inc.*, No. 07-1090, 2008 WL 190319, at * 4 (N.D. Tex. Jan. 22, 2008) (summarizing Firth Circuit and Texas law holding that reliance was unreasonable in light of a contract's disclaimer clause).  *Jacuzzi* summarizes the state of the law as follows:

> *See Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir.2003) (holding that reliance was unequivocally disclaimed based on proviso that stated: "This Agreement shall constitute the entire contract between the parties and supercedes all existing agreements between them, whether oral or written, with respect to the subject matter hereof."); *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 403 (5th Cir.2000) (holding that provision that stated, "the contract is in lieu of any and all prior or contemporaneous agreements, communications or understandings, whether written or unwritten . . . between and among any of the parties . . . or their affiliates with respect to matters set out herein," effectively disclaimed reliance on promise that parties would enter into subsequent contract) (internal quotations omitted); *Ikon Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 125-28 (Tex.App.2004, pet. denied) (holding that the following clause prevented reliance on representations related to job description: "The Acquisition Agreement . . . constitutes the entire agreement concerning the subject matter hereof.  No modification or waiver hereof shall be binding upon any party unless in writing and signed by or on behalf of the party against which the modification or waiver is asserted . . . .  No commitments have been made relative to bonuses, guarantees or any other special provisions, except as specifically identified herein.") (internal quotation marks and brackets omitted) . . . . ; *but see Dunbar Med. Sys., Inc. v. Gammex, Inc.*, 216 F.3d 441, 448-49, [] 51 (5th Cir.2000) (holding that fraudulent inducement claim was not barred by merger clause that stated, "the Settlement Agreement contains the entire agreement between the parties, and no representations, inducements, promises, or agreement, oral or otherwise between the parties with reference thereto and not embodied herein shall be of any force," because it did "not reflect the requisite clear and unequivocal expression of intent necessary to *disclaim reliance* on the specific representations.") (emphasis added; internal quotation marks and brackets omitted)).

*Id.*

**Memorandum Opinion and Order - Page 34**

Based on Plaintiff's express assent to the termination provision, the court determines that there is no genuine dispute of material fact as to Plaintiff's claim for fraudulent inducement, and Sara Lee is entitled to judgment as a matter of law on this claim.  Accordingly, the court will grant Sara Lee's motion for summary judgment as to Plaintiff's fraudulent inducement claim.

### E.      Lost Profits and Other Damages Available under Illinois Law

Sara Lee requests "a summary judgment order stating that Jacked Up is not entitled to its claimed lost profits as a matter of law." Def.'s Mot. Summ. J. 20.  Sara Lee also asserts that, even if lost profits are recoverable, Jacked Up cannot recover any damages beyond the termination date of the license agreement and, again, cites Illinois law to support its contention.

Given the current posture of this case, the court determines that these arguments are no longer relevant.  The court will grant Sara Lee's Motion for summary judgment as to all of Plaintiff's claims and thereby moot the parties' arguments regarding Plaintiff's ability to recover damages.

## IV.    Motions to Strike

The court has the following pending motions to strike before it: Defendants' Motion to Strike Summary Judgment Evidence (Doc. 87), filed October 10, 2014; and Plaintiff's Motion to Strike Summary Judgment Evidence (Doc. 129), filed December 8, 2014. The court has only considered evidence that is admissible pursuant to Rule 56 of the Federal Rules of Civil Procedure and the summary judgment standard herein enunciated.  Accordingly, the court **denies** Defendants' Motion to Strike Summary Judgment Evidence and **denies** Plaintiff's Motion to Strike Summary Judgment Evidence.

V.      **Conclusion**

    A.      **Sara Lee's Motion for Summary Judgment**

For the reasons herein stated, the court **determines** that there is no genuine dispute of material fact as to Plaintiff's claims for breach of contract, breach of the fiduciary duty, fraud, and fraudulent inducement; and Sara Lee is entitled to judgment as a matter of law.  Accordingly, the court **grants** Sara Lee's Motion for Summary Judgment and **dismisses with prejudice** these claims.

    B.      **Jacked Up's Motion for Partial Summary Judgment**

In light of this opinion, granting Jacked Up's Motion for Partial Summary Judgment would be inconsistent with the ruling herein made by the court regarding Sara Lee's motion for summary judgment, and the court, therefore, **denies** Plaintiff's Motion for Partial Summary Judgment.

Further, in light of this opinion, the court **denies as moot** Defendants' Motion to Exclude Testimony of Plaintiff's Damages Expert (Doc. 85), filed October 10, 2014.  There are no remaining claims against Sara Lee, and judgment will issue by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

    **It is so ordered** this 4th day of June, 2015.

                                                   Sam A. Lindsay
                                                 United States District Judge