**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JACKED UP, LLC**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-3296-L** |
| | § | |
| **SARA LEE CORPORATION**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant's Motion for Summary Judgment (Doc. 210) (under seal),

filed on June 12, 2018; Defendant Sara Lee's Motion to Strike Summary Judgment Evidence (Doc.

223) (under seal), filed August 6, 2018; and Plaintiff Jacked Up, LLC's Motion for Partial Summary

Judgment (Doc. 212) (under seal), filed June 29, 2018. Having carefully considered the motions,

responses, replies, evidence, record, and applicable law, and for the reasons that follow, the court

**grants** Defendant's Motion for Summary Judgment (Doc. 210); **grants** Defendant Sara Lee's

Motion to Strike Summary Judgment Evidence (Doc. 223); and **denies** Plaintiff Jacked Up, LLC's

Motion for Partial Summary Judgment (Doc. 212).

## I.    Background

The parties to this litigation are Jacked Up, LLC ("Jacked Up") and Sara Lee Corporation

("Sara Lee"). The court has addressed this lawsuit in prior opinions and only sets forth those

background facts and the procedural history necessary to decide the pending motions. *See Jacked*

*Up, L.L.C. v. Sara Lee Corp.*, Nos. 3:11-CV-3296-L and 3:13-CV-3752-L, 2015 WL 3513195 (N.D.

Tex. June 4, 2015) (Lindsay, J.) ("*Jacked Up I*"), *aff'd in part and rev'd in part*, *Jacked Up, L.L.C.*

*v. Sara Lee Corp.*, 854 F.3d 797, 817 (5th Cir. 2017) ("*Jacked Up II*"); *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 798 (N.D. Tex. 2018) (Horan, M.J.) ("*Jacked Up III*"), *aff'd*, No. 3:11-CV-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018) ("*Jacked Up IV*") (Lindsay, J.). Unless otherwise noted, the following facts are undisputed.[1]

Jacked Up is a privately owned company that develops, manufactures, and markets energy beverages. Sara Lee is a publicly owned food and beverage company. Jacked Up's founder and sole owner, Joseph Schmitz ("Schmitz"), met some Sara Lee employees at a trade show in early 2011. Schmitz and the Sara Lee employees discussed creating a Jacked Up line of dispensed teas, coffees, and cappuccinos. Sara Lee already had an "Infusia" line of vitamin-infused teas under the Pickwick brand, but these teas were not marketed as energy drinks and did not sell well. Sara Lee saw a Jacked Up line of beverages as an opportunity to enter the energy drink market and pioneer a brand-new dispensed energy beverage category.

After several months of negotiations and product development, Jacked Up agreed to license its brand name and proprietary energy ingredients to Sara Lee in exchange for royalties. On October 1, 2011, Jacked Up and Sara Lee entered into a license agreement (the "License Agreement") to "develop, manufacture, market and sell" certain beverage products. App. to Sara Lee Corp.'s Mot. for Summ. J. ("Sara Lee SJ App.") (Doc. 211) (under seal), at 65-76 (License Agreement). Under the License Agreement, Jacked Up (the "Licensor") granted Sara Lee (the "Licensee") an exclusive

---

[1] The court's recitation of the facts is based on its prior opinion, *see Jacked Up I*; the Fifth Circuit's opinion in *Jacked Up II*; the evidence before the Fifth Circuit; and the appendices filed by the parties in connection with the pending motions. *See* App. to Sara Lee Corp.'s Mot. for Summ. J. ("Sara Lee SJ App.") (Doc. 211) (under seal); Confidential App. to Pl. Jacked Up, LLC's Resp. to Def. Sara Lee Corp.'s Mot. for Summ. J. ("Jacked Up Resp. App.") (Doc. 218) (under seal); Confidential App. to Pl.'s Mot. for Partial Summ. J. ("Jacked Up SJ App.") (Doc. 214) (under seal); App. to Defs.' Resp. and Brief in Opp'n to Pl.'s Partial Mot. for Summ. J. (under seal) (Doc. 220); App. to Sara Lee's Mot. to Strike Summ. J. Evid. (under seal) (Doc. 224).

license to use its trademarks to sell certain "Licensed Products," which the parties proposed to develop, market, and sell in the future. *Id.* at 66 (License Agreement, §§ 2(a) and 2(b)).

The initial term of the License Agreement was five years, followed by a three-year renewal term. *Id.* at 68 (License Agreement, § 7). The License Agreement contained a number of termination clauses triggered by various events and dates. One such provision, Section 14(b), provided as follows: "Either party shall have the right to terminate this Agreement if it provides written notice to the other party no later than 60 days prior to any anniversary of the Effective Date." *Id.* at 71 (License Agreement Section § 14(b)). Sara Lee proposed adding this termination provision while the parties were finalizing the agreement. In an e-mail, Sara Lee referred to this provision as an "annual Termination clause" that would afford both parties "the ability to terminate if strategy changes or market conditions shift, etc." Confidential App. to Pl.'s Mot. for Partial Summ. J. ("Jacked Up SJ App.") 4, 89. Jacked Up accepted the added provision.

During negotiations, Sara Lee also requested a change-of-control termination provision (Section 14(c)). In an e-mail, Sara Lee director of marketing Greg Immell ("Immell") explained that Sara Lee wanted to include this provision "in the event North American Beverage is purchased by a third party company." *Id.* at 4. Schmitz asserted that this statement led him to question Sara Lee "executives Mr. Drake and Mr. Immell about any intent to sell the North American Beverage [Division]." *Id.* According to Schmitz, these executives represented that Sara Lee "had no intent to sell the business and that it was not discussing any sale to any third party. They also represented that [Schmitz] did not need to be concerned as under no circumstance would [Sara Lee sell] the business and not include the License Agreement as part of the deal." *Id.* at 4. Jacked Up and Sara

Lee finalized the licensing agreement around September 28, 2011, with an effective date of October 1, 2011.

In early October 2011, shortly after the License Agreement went into effect, Sara Lee displayed Jacked Up products at a convenience store trade show. According to Schmitz, a Sara Lee worker at the show told him about an impending sale of the company. Schmitz testified that he again asked Sara Lee executives—Immell and director of sales Jim Whitaker—whether Sara Lee was planning a sale. The executives, according to Schmitz, again represented that Sara Lee was not selling its business.

On October 24, 2011, Sara Lee announced the sale of certain North American food service coffee and tea operations to J.M. Smucker Company ("Smucker"). According to Schmitz, Sara Lee had asked him to participate in a telephone call around October 21, 2011. On that call, according to Schmitz,

> Mr. Immell stated that [Sara Lee] was selling its coffee business to Smuckers, that the License Agreement would not be part of the [sale] to Smucker[], that [Sara Lee] was terminating the License Agreement immediately at Smucker['s] request, that [Sara Lee] would no longer perform any obligations under the agreement, and that [Sara Lee] was discontinuing the Jacked Up Energy Iced Teas, Coffees, and Cappuccinos.

*Id.* at 9-10. Schmitz testified that had he known of Sara Lee's impending sale to Smucker, he would not have signed the License Agreement and would not have launched Jacked Up products at the convenience store trade show.

Immell recounted the telephone call with Schmitz differently. According to Immell, he did tell Schmitz that Smucker would not assume the License Agreement, but he also indicated that "Sara Lee was interested in pushing forward with the proposed dispensed energy iced tea product pursuant

to the License Agreement, including by pursuing the required market testing to see how a Jacked Up branded dispensed energy iced tea would fare in the marketplace." Sara Lee SJ App. 30. Schmitz refused to move forward with market testing, however. According to Immell's account, therefore, it was Jacked Up that violated the agreement first.

Ultimately, Smucker declined to assume the License Agreement as part of its purchase transaction with Sara Lee. Sara Lee advised Jacked Up about Smucker's decision after the sale transaction was publicly announced. On November 18, 2011, Sara Lee provided Jacked Up with written notice of its intention to terminate the License Agreement.

On November 7, 2011, before Sara Lee sent Jacked Up a formal termination letter, Jacked Up brought a breach of contract claim against Sara Lee in the 134th Judicial District Court of Dallas County, Texas, captioned *Jacked Up, LLC v. Sara Lee Corp.*, Cause No. DC-11-14149. On November 29, 2011, Sara Lee removed the state court action to federal court because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). On August 26, 2013, Jacked Up filed a separate lawsuit against Smucker in the District Court for the 192nd Judicial District, Dallas County, Texas, captioned *Jacked Up, LLC v. The J. M. Smucker Company*, Cause No. DC-13-09655. Jacked Up alleged, among other things, that Smucker tortiously interfered with the License Agreement. Smucker subsequently removed that action to federal court, similarly based on 28 U.S.C. § 1332(a), and it was randomly assigned to the docket of the Honorable Jane J. Boyle. *See Jacked Up, LLC v. J.M. Smucker Company*, Civil Action No. 3:13-CV-3752-B. On September 25, 2013, the undersigned accepted a transfer of this related case from Judge Boyle and consolidated it with Jacked Up's lawsuit against Sara Lee. *See* Order (Doc. 50). Jacked Up later added a claim against Smucker for common law

trade secret misappropriation and added claims against Sara Lee for breach of fiduciary duty, fraud, and fraudulent inducement. *See* Sec. Am. Compl. (Doc. 53).

At the close of discovery, Jacked Up moved for summary judgment on its claims for breach of contract, fraud, and fraudulent inducement against Sara Lee. Sara Lee moved for summary judgment on Jacked Up's claims for breach of contract, breach of fiduciary duty, fraud, and fraudulent inducement. Smucker moved for summary judgment on Jacked Up's claims for tortious interference and trade secret misappropriation.

In support of its motion for summary judgment, Sara Lee argued that it did not breach the License Agreement because it terminated the agreement in accordance with Section 14(b). According to Sara Lee, the first anniversary of the "Effective Date" was October 1, 2012, which represents a lapse of one year from the Effective Date. Based on this, Sara Lee argued that, as to the first anniversary of the Effective Date, the License Agreement permitted it to terminate the agreement no later than August 1, 2012, which is 60 days prior to October 1, 2012. In other words, August 1, 2012, represented the last date on which the Licence Agreement permitted either party to terminate the agreement under Section 14(b). Because Sara Lee terminated the agreement on November 18, 2011, prior to August 1, 2012, it maintained that it did not breach the License Agreement.

Jacked Up argued that Section 14(b) of the License Agreement was ambiguous, and that Schmitz and his counsel thought the provision referred to the specific term of years defined in the contract and not the broader interpretation espoused by Sara Lee. Particularly, the License Agreement included an initial term of five years to conclude on December 31, 2016, and an additional term of three years upon an automatic renewal. Sara Lee's SJ App. 68, License

Agreement, Section § 7. Jacked Up considered the term "anniversary" to refer to the first term of five years and the renewal term of three years, and not to the annual anniversary of the Effective date.

The undersigned granted Smucker's and Sara Lee's motions for summary judgment and entered judgment in favor of Sara Lee and Smucker. *See Jacked Up I,* 2015 WL 3513195 (N.D. Tex. June 4, 2015) (Lindsay, J.). In granting summary judgment in Sara Lee's favor on Jacked Up's breach of contract claim, the court concluded that Sara Lee terminated the Licensing Agreement in accordance with the unambiguous language of Section 14(b), which gave either party "the right to terminate the Agreement if it provides written notice to the other party no later than 60 days prior to any anniversary of the Effective Date." *Id.* at *3. With respect to Jacked Up's breach of fiduciary duty claim, the court granted summary judgment in favor of Sara Lee, determining that Sara Lee did not owe any fiduciary duty to Jacked Up. Further, the court granted summary judgment in favor of Sara Lee on Jacked Up's fraud and fraudulent inducement claims, both of which rely on a series of alleged misrepresentations, for two different reasons. On the fraud claim, the court concluded that Jacked Up pleaded constructive, rather than common law, fraud. Constructive fraud, like breach of fiduciary duty, requires the existence of a fiduciary relationship. *See Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. App.—Fort Worth 2004, pet. denied). Because Sara Lee did not owe fiduciary duties to Jacked Up, the court granted summary judgment in favor of Sara Lee on the fraud claim. On the fraudulent inducement claim, the court first determined that several alleged misrepresentations contradicted the terms of the License Agreement and, therefore, could not support a fraudulent inducement claim as a matter of law. Second, the court determined that Jacked Up's reliance on other alleged misrepresentations was unjustified. As previously noted, with respect

to Jacked Up's claims against Smucker for tortious interference and trade secret misappropriation, the court granted summary judgment in Smucker's favor. Jacked Up appealed.

On May 17, 2017, the United States Court of Appeals for the Fifth Circuit issued its mandate in this case. The Fifth Circuit ordered and adjudged that the judgment of the district court in *Jacked Up I* is affirmed in part and reversed in part, and ordered that the case be remanded to the district court for "further proceedings in accordance with the opinion of this Court." *See* Mandate (Doc. 178). In its opinion, issued on April 25, 2017, the Fifth Circuit affirmed summary judgment against Jacked Up on its claims for tortious interference and trade secret misappropriation that it had asserted against Smucker. *Jacked Up II*, 854 F.3d at 813-16. The Fifth Circuit also affirmed summary judgment against Jacked Up on its claim for breach of fiduciary duty that it had asserted against Sara Lee. *Id.* at 808-10.

The Fifth Circuit reversed the court's decision granting summary judgment in favor of Sara Lee on Jacked Up's claims for breach of contract, fraud, and fraudulent inducement, *id.* at 817, and remanded Jacked Up's claims for breach of contract, fraud, and fraudulent inducement for further proceedings. *Id.* In reversing the court's decision granting summary judgment in Sara Lee's favor on Jacked Up's breach of contract claim, the Fifth Circuit concluded that Section 14(b) of the License Agreement was ambiguous "because the text is silent about when termination is effective." *Id.* at 807. In addition, the Fifth Circuit found that "there are genuine disputes [in the record] about whether Sara Lee breached the contract and whether Jacked Up performed under the contract." *Id.* at 808. With respect to Jacked Up's fraud and fraudulent inducement claims, the Fifth Circuit reversed the court's grant of summary judgment in Sara Lee's favor. First, it concluded that the district court erred in concluding that Jacked Up had only pleaded constructive fraud, and not

common law fraud.  *Id.* at 811.   According to the Fifth Circuit, while Jacked Up's fraud claim as articulated in its complaint is "consistent with constructive fraud[,] the complaint is not clearly inconsistent with common law fraud." *Id.*  Further, although the Fifth Circuit agreed with the district court that several alleged misrepresentations contradicted the terms of the License Agreement and, therefore, could not support a fraud or fraudulent inducement claim as a matter of law, it concluded that with respect to certain alleged misrepresentations, "there is a genuine dispute of fact as to whether Jacked Up's reliance on Sara Lee's representations was justifiable." *Id.* at 812.

Of note, the Fifth Circuit declined to affirm summary judgment against Jacked Up on its breach of contract, fraud, and fraudulent inducement claims on the alternative grounds that Sara Lee and Smucker had asserted, namely, "that Jacked Up's evidence of lost profits is speculative." *Id.* at 816.  The Fifth Circuit stated, "Jacked Up's evidence of lost profits—an expert report prepared by EJ Janik ('Janik Report')—is critical to its claim for damages.  Indeed, this expert report is the *only evidence of damages in the record*." *Id.* (emphasis added).  The Fifth Circuit, however, left "it to the district court to determine whether Jacked Up has put forth sufficient evidence of damages." *Id.* at 817.

Following remand, Jacked Up filed a motion for reconsideration of its previously filed Motion for Partial Summary Judgment (*see* Doc. 183) ("Motion for Reconsideration"), and Sara Lee sought leave to refile its Motion to Exclude the Testimony of Plaintiff's Damages Expert (*see* Doc. 85), which the court had previously denied as moot in its order granting summary judgment in favor of Smucker and Sara Lee.  After considering Sara Lee's motion for leave, Jacked Up's response, and the Fifth Circuit's opinion, including its invitation to the court to conduct a *Daubert* inquiry to determine whether the Janik Report is admissible opinion evidence under Federal Rule of Evidence

702 ("Rule 702"), the court granted Sara Lee's motion for leave and denied as premature Jacked Up's Motion for Reconsideration.

On November 27, 2017, Sara Lee filed its Amended Motion to Exclude Testimony of Plaintiff's Damages Expert (the "Motion to Exclude") (Doc. 188). On November 28, 2017, pursuant to 28 U.S.C. § 636(b), the court referred the Motion to Exclude to United States Magistrate Judge David Horan. On February 15, 2018, after the Motion to Exclude was fully briefed by the parties, Judge Horan granted Sara Lee's Motion to Exclude, concluding that the opinions of Jacked Up's damages expert, E.J. Janik, were inadmissible under Rule 702. *Jacked Up III*, 291 F. Supp. 3d at 798. According to Judge Horan, Jacked Up presented no "evidence as to why the Sara Lee Pro Forma is objective and believable," even if Sara Lee created it. *Id.* at 803. Judge Horan explained that "Jacked Up fails to explain the basis for several of Janik's assumptions that are unsupported by or contradict the evidence at hand." *Id.* at 807. Based on his review of the record submitted by Jacked Up in support of Janik's opinion, Judge Horan concluded that "Janik's opinions are unreliable and should be excluded under Federal Rule of Evidence 702 as too speculative to aid the trier of fact." *Id.* at 802.

On March 1, 2018, Jacked Up filed Objections to the Magistrate's Order Granting Defendant's Motion to Exclude Testimony of Plaintiff's Damages Expert ("Objections") (Doc. 202). On March 26, 2018, Sara Lee filed its Response to Plaintiff's Objections to the Magistrate's Order Granting Defendant's Motion to Exclude Testimony of Plaintiff's Damages Expert (Doc. 207).

On May 2, 2018, the court overruled in part and sustained in part Jacked Up's objections to Judge Horan's Order, but it affirmed the "decision of the Magistrate Judge to exclude the testimony of Jacked Up's damages expert." *Jacked Up IV*, 2018 WL 2064126, at *14. Specifically, the

undersigned affirmed Judge Horan's findings that "Janik did not test the validity and reasonableness of the Sara Lee Pro Forma," *id.* at \*7; that "Janik's projections rested on unsupported assumptions," *id.* at \*10; that "Janik's inclusion of coffee and cappuccino for seven out of eight years in his damages model, and his projections as to the volume of sales, are unsupported and too speculative to be admissible under Rule 702," *id.* at \*13; and that "there are cases in which 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion,'" *id.* (quoting *Jacked Up III*, 291 F. Supp. 3d at 808) (in turn quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

On May 31, 2018, the court issued a Scheduling Order setting forth a deadline of June 29, 2018, for the parties to file their dispositive motions. *See* Sch. Order (Doc. 209). The Scheduling Order, in keeping with the Fifth Circuit's Mandate, does not provide for the reopening of discovery or presentation of additional evidence not before the Fifth Circuit on appeal.

## II.    Legal Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility

determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the

entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Analysis

### A. Defendant's Motion for Summary Judgment (Doc. 210) and Motion to Strike Summary Judgment Evidence (Doc. 223)

Sara Lee moves for summary judgment on Jacked Up's three remaining claims: breach of contract, fraud, and fraudulent inducement. In support, Sara Lee contends that the court should grant summary judgment in its favor on Jacked Up's remaining three claims because: (1) Jacked Up cannot establish lost profit damages as a matter of law; (2) the Illinois "new business rule" bars recovery of lost profits damages as a matter of law, even if Jacked Up had admissible evidence to establish its lost profits; and (3) Jacked Up cannot recover any other category of damages as a matter of law. For the reasons that follow, the court concludes that Jacked Up cannot establish lost profit damages as a matter of law, and Sara Lee is, therefore, entitled to summary judgment on Jacked Up's remaining three claims, all of which require damages as an element of a claim. Alternatively, the court concludes that the Illinois "new business rule" bars recovery of lost profits damages based on the record.

In support of its summary judgment motion, Sara Lee contends Jacked Up cannot establish lost profit damages as a matter of law and, even if it could, the Illinois "new business rule" bars recovery of lost profits damages as a matter of law. In response, Jacked Up contends that "the record demonstrates that [it] suffered lost profits in the millions[.]" Resp. 12 (Doc. 217). The record

evidence upon which Jacked Up relies is contained in a July 16, 2018 Declaration by Schmitz, in which he makes damages calculations and opines as to Jacked Up's losses caused by Sara Lee's alleged breach of contract and fraud. *See* Jacked Up SJ App. (Doc. 214) (under seal) 1-13 (July 16, 2018 Declaration of Joseph Schmitz) ("Schmitz Decl."). Jacked up also contends that the Illinois "new business rule" has no application because Sara Lee is not a new business. In its reply, Sara Lee argues:

> Jacked Up's Response is the first time Sara Lee has learned of Schmitz's new damages computation, which are materially different than any damage disclosure provided by Jacked Up during the discovery period or before any relevant disclosure deadline. Schmitz himself has never offered a damages computation in this litigation before, either in the discovery responses, in his deposition, or more importantly, in any Rule 26(a)(2) disclosure. Doc. 65 at 1. *But see* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring disclosure of "a computation of each category of damages" "without awaiting a discovery request"); *see also* Fed. R. Civ. P. 26(a)(2)(A) ("[A] party must disclose to the other parties the identity of any witness that it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705[.]").

Reply 1 (Doc. 226).

In addition, Sara Lee has filed objections and a motion to strike Schmitz's damages computation and accompanying opinions. *See* Doc. 223. Sara Lee argues that the court should strike Schmitz's damages computation and opinions set forth in his July 16, 2018 Declaration because he was never disclosed as an expert witness and his damages computations are untimely, as they were never disclosed pursuant to Rule 26(a)(1)(A)(iii); and, that, given the advanced stage of this litigation, allowing proof of lost profits based on his damages computations and accompanying opinions would require reopening discovery and a continuance, which would be unduly prejudicial to Sara Lee. Sara Lee also argues that, insofar as Schmitz is seeking to provide testimony as a lay witness under Federal Rule of Evidence 701 ("Rule 701"), the court should strike his testimony because he lacks firsthand knowledge.

In response to Sara Lee's Motion to Strike, Jacked Up contends that it never designated Schmitz as a non-retained expert, and that Schmitz is qualified to testify as a lay witness under Rule 701 based on his experiences and involvement with the energy drink industry.

### 1. The Fifth Circuit's Mandate

As explained previously, as part of its mandate, the Fifth Circuit affirmed in part and reversed in part the undersigned's decision in *Jacked Up I* and ordered that the case be remanded to the district court for "further proceedings in accordance with the opinion of this Court." *See* Mandate (Doc. 178). While the Fifth Circuit remanded Jacked Up's breach of contract, fraud, and fraudulent inducement claims, it *explicitly* recognized that the only evidence of lost profits was an expert report by E.J. Janik, which Sara Lee had moved to exclude under *Daubert* and Rule 702, and which the district court had previously denied as moot in light of its decision to grant summary judgment in Sara Lee's favor on other grounds. As previously noted, the Fifth Circuit stated that Janik's Report was the only evidence of damages in the record and left it up to the undersigned to determine whether Janik's Report was admissible under Rule 702. "Jacked Up's evidence of lost profits—an expert report prepared by EJ Janik ('Janik Report')—is critical to its claim for damages. Indeed, this expert report is the *only evidence of damages in the record*." *Jacked Up II*, 854 F.3d at 816 (emphasis added). The Fifth Circuit, however, left "it to the district court to determine whether Jacked Up has put forth sufficient evidence of damages," further explaining that:

> [t]he district court may choose to conduct a *Daubert* inquiry to determine whether the Janik Report is admissible. Indeed, Sara Lee and Smucker moved to exclude the Janik Report, and this motion was still pending when the district court granted the summary judgment. *We leave it to the district court to determine whether the Janik Report is admissible*, and if it is admissible, whether it establishes lost profits with reasonable certainty.

*Id.* at 817 (emphasis added). The Fifth Circuit further stated:

Jacked Up likely could have claimed reliance damages. *See, e.g.*, Restatement (Second) of Contracts § 349 (Am. Law. Inst. 1981) ("As an alternative to [expectation damages], the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed."). Although counsel for Jacked Up stated at oral argument that Jacked Up does have reliance damages, *such damages are not substantiated in the record or explained in Jacked Up's briefs.*

*Id.* at 816 n.14 (emphasis added).

As part of the Fifth Circuit's mandate to conduct "further proceedings in accordance with the opinion of this Court[,]" *see* Mandate (Doc. 178), the court conducted a *Daubert* inquiry and ultimately determined that the Janik Report should be excluded under Rule 702. *See Jacked Up III*, 291 F. Supp. 3d 795, *aff'd*, *Jacked Up IV*, 2018 WL 2064126.

Jacked Up's attempt to introduce new evidence of damages in the form of Schmitz's damages computation and accompanying opinions—which it did not disclose in its Rule 26 initial disclosures or supplemental disclosures—ignores existing precedent regarding the mandate rule, aptly summarized as follows:

> The mandate rule, which is a corollary or specific application of the law of the case doctrine, prohibits a district court on remand from reexamining an issue of law or fact previously decided on appeal and not resubmitted to the trial court on remand. The prohibition covers issues decided both expressly and by necessary implication, and reflects the jurisprudential policy that once an issue is litigated and decided, that should be the end of the matter. This rule is essential to the orderly administration of justice, as it is aimed at preventing obstinate litigants from repeatedly reasserting the same arguments and at discouraging opportunistic litigants from appealing repeatedly in the hope of acquiring a more favorable appellate panel.

*United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006) (footnotes, citations, and internal quotation marks omitted) (emphasis in original). "When on remand the district court assays to implement the mandate, it must proceed within the letter and spirit of the mandate by taking into

account the appeals court's opinion and the circumstances it embraces." *Id.* (citing *Sobley v. Southern Natural Gas Co.*, 302 F.3d 325, 333 (5th Cir. 2002)). More to the point, "[t]he mandate rule requires a district court on remand to effect our mandate and to do nothing else." *General Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (citations omitted).

The Fifth Circuit in *Jacked Up II* did not even intimate, much less order, that the district court was required to reopen discovery or allow the production of additional evidence; rather, it invited the court to conduct a *Daubert* inquiry as to whether the only evidence of lost profit damages, the Janik Report, was admissible under Rule 702; and this court has performed that task. The court is not at liberty to stray from the Fifth Circuit's mandate. On this basis alone, Jacked Up is not entitled to a consideration of Schmitz's damages computations and accompanying opinions. Even if the court is not constrained by the mandate rule, it will grant Sara Lee's motion to strike Schmitz's damages computations and accompanying opinions for Jacked Up's failure to comply with certain Federal Rules of Civil Procedure.

### 2. Jacked Up's Failure to Timely Disclose Schmitz's Damages Computations

Rule 26(a)(1)(A)(iii) requires disclosure of "a computation of each category of damages" "without awaiting a discovery request"; Rule 37(c)(1) provides for the exclusion of evidence not disclosed in accordance with Rule 26(a). The court has reviewed Jacked Up's Rule 26 disclosures. They do not include Schmitz's damages calculations and are inconsistent with his calculations.

Jacked Up filed its supplemental disclosures on April 14, 2014. The supplemental disclosures do not mention any opinions by Schmitz. *See* App. to Sara Lee's Mot. to Strike Summ. J. Evid. (Doc. 224) (under seal) at 9-18 (Plaintiff Jacked Up, LLC's Supplemental Disclosures). In addition, as Sara Lee aptly notes, "The supplemental disclosures also provide different numbers on

the key components of Schmitz's new computation: different year 1 locations; different growth rates; different distribution channels; and no mention of any of Jacked Up's purported existing distribution network. They also provide a different damage number." Sara Lee Mot. to Strike 4 (Doc. 223).

Despite the court's conclusion that Jacked Up's disclosures and supplemental disclosures failed to comply with Rule 26(a)(1)(A)(iii), exclusion of Schmitz's damages computations is not mandatory or automatic. Instead, it is a matter of this court's discretion. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Wilson v. Home Depot U.S.A., Inc.*, No. 12-cv-5292, 2014 WL 1882024, at *2 (N.D. Tex. May 12, 2014) (Boyle, J.) (quoting Fed. R. Civ. P. 37(c)(1) (When a party does not make necessary disclosures under Rule 26, it may not "use that information or witness to 'supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" ).

In deciding whether a violation of Rule 26 is harmless, the court is guided by four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (citation omitted); *see also CQ Inc. v. TXU Mining Co. LP*, 565 F.3d 268, 279 (5th Cir. 2009) (quoting Fed. R. Civ. P. 37(c)(1)) (affirming district court's exclusion of nonexpert damages computations that were not timely disclosed).

The court agrees with Sara Lee that Jacked Up's Rule 26 violation is not harmless. Although the damages evidence may be important to Jacked Up's claims, "[s][ignificantly, [Jacked Up] has not offered any justification for its failure to disclose the damages calculations[.]" *CQ Inc.*, 565 F.3d at 280. Further, Sara Lee would be prejudiced were the court to excuse Jacked Up's violation. Allowing Schmitz's damages computation at this late juncture would require the court to create a new briefing schedule and reopen discovery in a more-than-seven-year-old case, in which discovery closed in 2014. These modifications to the court's and the parties' schedules support a finding that the failure to disclose is not harmless or substantially justified. Considering the record, the court concludes it would be fundamentally unfair to subject Sara Lee to a continuance under these circumstances, especially given Jacked Up's failure to offer any explanation for its failure to disclose Schmitz's damages calculations years earlier in compliance with Rule 26.

Further, to the extent Jacked Up is proffering Schmitz as a lay witness, the court excludes his damages computations and related opinions as inadmissible opinions of a lay witness under Rule 701. "[L]ay opinion testimony may be elicited only if it is based on the witness's firsthand knowledge or observations." *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685 (5th Cir. 2003) (emphasis added). While a business owner may testify about his business' lost profits, he or she can do so only "if the witness has direct knowledge of the business accounts underlying the profit calculation." *Mississippi Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002); *see also DIJO, Inc.*, 351 F.3d at 686 ("The further removed a layman is from a company's day-to-day operations, the less likely it is that his opinion testimony will be admissible under Rule 701."). "[G]eneric industry experience does not pass Rule 701 scrutiny." *Id.* Schmitz does not provide a proper foundation for personal knowledge even as to Jacked Up's existing sales. He identifies

himself as the "the sole owner of the Plaintiff in this action," Doc. 41-9 (¶ 2), and as the "the owner and President of Jacked Up, LLC," Doc. 218 at App. 1 (¶2). He does not, however, provide any facts about his role in the day-to-day operations of the company's sales and revenue matters, or his familiarity with the financial statements and financial performance of the company. The court concludes his testimony is speculative at best, as it is unclear what Schmitz does and what he knows about the company's sales performance.[2]

"Damages are an essential element of a breach of contract action and a claimant's failure to prove damages entitles the defendant to judgment as a matter of law." *In re Illinois Bell Tel.Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013).[3] That is, even when a plaintiff proves the breach of a contract, he must nonetheless demonstrate he suffered a loss as a result of the breach. If a plaintiff fails to produce legally sufficient evidence of damages resulting from the breach, summary judgment is appropriate. *See, e.g., Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 540-41 (7th Cir. 2008) ("Merely showing that a contract has been breached without demonstrating actual damages dose not suffice . . . to state a claim for breach of contract."); *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007) (affirming the district court's grant of summary judgment because the plaintiff could not prove damages even if there remained a material dispute as to whether a breach occurred); *Transp. & Transit Assocs., Inc. v. Morrison*

---

[2] In addition, Schmitz's lay testimony is inadmissible because he lacks personal knowledge or relevant experience *related to the production or sale of a dispensed energy tea.* A lay witness must have "personalized knowledge of the facts underlying the opinion." *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d at 373. Here, Schmitz purports to calculate Jacked Up's lost profits from its new energy tea venture with Sara Lee. Schmitz, however, has no personal knowledge related to the sale of a dispensed energy tea *because no dispensed energy tea was ever marketed or sold by Jacked Up or Sara Lee.* Instead, Schmitz relies on his company's purported sales of certain energy shots, which is an entirely different product.

[3] According to its terms, Illinois law governs the License Agreement. Sara Lee SJ App. 68 (License Agreement, § 20(g)).

*Knudsen Corp.*, 255 F.3d 397, 401 (7th Cir. 2001) (affirming summary judgment where plaintiff was unable to prove actual damages from the breach). Texas law is in accord. *See Balch v. JP Morgan Chase Bank, NA*, No. 3:14-CV-3666-M, 2015 WL 1592386, at *3 (N.D. Tex. Apr. 8, 2015) ("Damages are an essential element to a breach of contract claim.") (citing *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

As Sara Lee correctly argues, the same is true for fraud: "damages or injury are a necessary element of the tort." *Kelman v. University of Chicago*, 519 N.E.2d 708, 711 (Ill. App. Ct. 1988) (affirming summary judgment due to absence of proof that damages resulted from alleged fraud); *Shah v. Chicago Title & Tr. Co.*, 457 N.E.2d 147, 150 (Ill. App. Ct. 1983) (affirming summary judgment on fraud claims due to absence of "[p]roof of actual injury"). Texas law is in accord. *Harris County Texas v. MERSCORP Inc.*, 791 F.3d 545, 560 (5th Cir. 2015) (affirming grant of summary judgment on plaintiff's fraud claim because plaintiff failed to prove damages).

As Jacked Up lacks any competent summary judgment evidence supporting its claim for lost profits—the only category of damages it seeks in this case—the court will grant Sara Lee's motion for summary judgment on Jacked Up's remaining claims. Because the court excluded Jacked Up's only evidence of damages, the Janik Report, it cannot prevail on any of its claims. Accordingly, there is no genuine dispute of material fact regarding Jacked Up's claims for breach of contract, fraud, and fraudulent inducement, and Sara Lee is entitled to judgment as a matter of law on these three claims.

For these reasons, the court will grant Defendant Sara Lee's Motion to Strike Summary Judgment Evidence (Doc. 223), strike Schmitz's damages computation and accompanying opinions, and grant Defendant Sara Lee's Motion to Strike Summary Judgment Evidence (Doc. 210).[4]

## B.      Plaintiff Jacked Up, LLC's Motion for Partial Summary Judgment (Doc. 212)

Jacked Up moves for partial summary judgment on the liability elements of Jacked Up's breach of contract and fraud claims. In light of this opinion, granting Jacked Up's Motion for Partial Summary Judgment would be inconsistent with the ruling herein made by the court regarding Sara Lee's motion for summary judgment, and the court, therefore, denies Sara Lee's Motion for Partial Summary Judgment.

In the alternative, the court will deny Jacked Up's Motion for Partial Summary Judgment, as it seeks summary judgment without any admissible evidence of damages. It, therefore, cannot establish liability for its breach of contract and fraud claims as a matter of law. *See Patrick Schaumburg Autos., Inc. v. Hanover Ins. Co.*, 452 F. Supp. 2d 857, 866 (N.D. Ill. 2006) ("[W]here the fact of damage or injury is an element of the claim, there can be no liability without proof that there is injury or damage."). "In that situation, if there is a question of fact as to the existence of any damages, summary judgment should not be granted." *Id.* (citation omitted). "Rule 56(c) contemplates a procedure [that] clears away all matters except a prove-up or computation of damages

---

[4] Although the court need not reach Sara Lee's alternative arguments supporting its motion for summary judgment, the court also **concludes** that summary judgment is warranted because the Illinois "new business rule" bars recovery of lost profits damages as a matter of law, even if Jacked Up had admissible evidence to establish its lost profits. According to the Supreme Court of Illinois, "courts consider evidence of lost profits in a new business too speculative to sustain the burden of proof." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 407 (Ill. 2006). The dispensed energy tea at issue here was entirely new: it was a new product, in a new product category, with a new brand, a new formula, and sold in a new market. Jacked Up's owner testified that these were "new formulas," "new names," and "new campaigns." Sara Lee SJ App. 305 (Schmitz Dep. Tr. at 102:12-14). On this record, lost profits are barred under the Illinois "new business rule" as too speculative as a matter of law. As such, even were the court to deny Sara Lee's motion to strike Schmitz's damages computations and accompanying opinions, summary judgment would still be warranted under the Illinois' "new business rule."

after the existence of some recoverable damages is established." *Berman v. Thomson*, 45 F.R.D. 342, 344 (N.D.Ill.1968), *vacated on other grounds*, 312 F. Supp. 1031 (N.D. Ill. 1970) (denying summary judgment on liability where defendant's liability hinged on whether there were recoverable damages).[5]

Accordingly, for these reasons, the court will deny Plaintiff Jacked Up, LLC's Motion for Partial Summary Judgment (Doc. 212).

## IV.    Conclusion

For the reasons herein stated, there is no genuine dispute of material fact regarding Jacked Up's three claims, and Sara Lee is entitled to judgment as a matter of law. Accordingly, the court **grants** Defendant's Motion for Summary Judgment (Doc. 210); **grants** Defendant Sara Lee's Motion to Strike Summary Judgment Evidence (Doc. 223); and **denies** Plaintiff Jacked Up, LLC's Motion for Partial Summary Judgment (Doc. 212). Jacked Up's claims against Sara Lee for breach of contract, fraud, and fraudulent inducement are hereby **dismissed with prejudice**. The court, as required by Federal Rule of Civil Procedure 58, will issue judgment in favor of Sara Lee by separate document.

**It is so ordered** this 8th day of March, 2019.

Sam A. Lindsay
United States District Judge

---

[5] Insofar as Jacked Up seeks nominal damages, the court determines that nominal damages are not appropriate on this record because Jacked Up has not established it suffered *any* damages as a result of Sara Lee's alleged breach of the contract.